IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DORINDA M. MEADOWS,

    Plaintiff,

vs.                                     Case No. 5:09cv351-RH/WCS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

                                   /

## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. LOC. R. 72.2(D). It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

Plaintiff, Dorinda M. Meadows, applied for disability insurance benefits and supplemental security income benefits. Her last date of insured status for disability benefits was June 30, 2010. Plaintiff alleges disability due to fibromyalgia, joint pain, disk herniation at C5-C6, major depressive disorder, anxiety disorder, seizure disorder,

restless leg syndrome, and carpal tunnel syndrome, with onset on September 13, 2006. Plaintiff was 53 years old at the time of the administrative hearing (on May 6, 2009), has a 12th grade education with cosmetology training, and has past relevant work as a school secretary, hair stylist, and salon manager.

The Administrative Law Judge found that Plaintiff has the residual functional capacity to do a full range of light work, R. 15, can still perform her past relevant work, R. 18, and thus was not disabled. R. 18. He also noted that even if Plaintiff could no longer do her past relevant work, Rule 202.14 of the "grids"[1] directs a conclusion that Plaintiff is not disabled. R. 18. Finally, he noted that if the "grids" were inapplicable, the vocational expert identified several jobs which the Plaintiff could still do, and this would be a third basis for finding Plaintiff to be not disabled. R. 19.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). "If the Commissioner's decision is supported by substantial evidence we must

---

[1] Appendix 2 to Subpart P of Part 404 – Medical-Vocational Guidelines, found at: http://www.ssa.gov/OP_Home/cfr20/404/404-ap11.htm

affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted). The court must give "substantial deference to the Commissioner's decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Both the "impairment" and the "inability" must

be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)-(f):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy.  Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Evidence from the administrative hearing**

Plaintiff testified that she last worked in 2005, and that she could not go back to work due to constant physical pain.  R. 24-25.  She said the pain was mostly in her

knees and legs, and fluctuates. R. 25. She said that on a daily basis the pain level is 5 or 6 on a scale of 10, but sometimes is 10 or 11. *Id.* Plaintiff said that she has many parts of her body that are in pain. R. 30. She said that her joints hurt from time to time, and her muscles "all knot regularly." *Id.*

Plaintiff said that she has a lot of trouble with her hands and arms. *Id.* Plaintiff said that she has a pinched nerve in her neck causing pain to radiate down her arms and hands. R. 26. She said she had been referred to a surgeon, Dr. Stringer, due to the bulging disc, but did not see the surgeon for lack of money. *Id.*

Plaintiff said she had 80% loss of use of both hands. *Id.* She said her hands had numbness and tingling. *Id.* She said she could pick up a gallon of milk, and sometimes must use two hands. R. 27. She said that lifting a gallon of milk hurts her wrists, and her hands are numb. *Id.* She said that surgery for carpal tunnel syndrome has been "suggested." *Id.* Plaintiff said she could pick up and carry small objects for short periods of time (a coffee cup or a pen), but may also drop the object and not realize it. R. 27-28. She said that she sometimes drops a water glass into her lap because she cannot feel it. R. 30. She said that sometimes she can use her hands for an hour and sometimes for only five minutes. R. 28. Plaintiff said that she cannot type because she cannot feel her fingers, and her hand impairments preclude office work. R. 32. Plaintiff said that she has had carpal tunnel syndrome since 1990. *Id.* She admitted she had worked all of those years with this impairment, but said that it was not until 2007 "when it was documented," though she also admitted that it was diagnosed "early." *Id.* She said that early on, she was treated by a chiropractor, which allowed her to keep on

working.  *Id.*  Plaintiff said that her carpal tunnel syndrome began when she injured her neck in a motor vehicle accident.  R. 32-33.  She was recently supposed to see Dr. Stringer for carpal tunnel syndrome, but was unable to see him.  R. 28.

Plaintiff said that she cannot sit for very long without getting stiff, and her most comfortable position is lying down.  R. 33.  She said she alternates between sitting and standing all day.  *Id.*

Plaintiff said that she can do household chores by doing some work and then resting.  R. 29-30.  She said that some days she can only do a load of laundry, and other days she can work half a day cleaning the bathroom.  R. 30.

**Legal analysis**[2]

Plaintiff contends that the Administrative Law Judge erred in the way he considered Plaintiff's subjective complaints of pain.  Doc. 13, p. 10.  The medical evidence will be discussed as it relates to this contention.

Pain and other symptoms reasonably attributed to a medically determinable impairment are relevant evidence for determining residual functional capacity.  Social Security Ruling 96-8p, p. 4.  Pain and other symptoms may affect either exertional or non-exertional capacity, or both.  *Id.*, p. 6.

---

[2] Descriptions of drugs are from PDRhealth™, PHYSICIANS DESKTOP REFERENCE, found at < http://www.pdrhealth.com/drugs/drugs-index.aspx >.  Information about medical terms and prescription drugs come from DORLAND'S MEDICAL DICTIONARY FOR HEALTHCARE CONSUMERS, available at:  http://www.mercksource.com (Medical Dictionary link).  Social Security Rulings can be found at: http://www.ssa.gov/OP_Home/rulings/rulfind1.html.   The pages at these websites are not attached to this report and recommendation as the information is relatively well-settled, the precise definitions are not at issue in this case, and the definitions are not likely to be in dispute.

Case No. 5:09cv351-RH/WCS

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *See Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). The reasons articulated by the ALJ for disregarding the claimant's subjective testimony must be based upon substantial evidence. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991). It is not necessary that the ALJ expressly identify this circuit's standard if his findings "leave no doubt as to the appropriate result" under the law. Landry v. Heckler, 782 F.2d 1551, 1553-1554 (11th Cir. 1986).

Plaintiff contends that there is evidence of two underlying medical conditions supportive of her pain testimony. First, Plaintiff contends that there is evidence of focal disc herniation at C5-C6 and a minimal disk bulge at C6-C7. Doc. 13, p. 11, citing Exhibits 2F and 3F.[3] This is supported by the record. An MRI on October 5, 2006, found:

> Alignment of the cervical spine is normal. Disk heights are fairly well maintained. There is a left-sided paracentral disk herniation at C5-6 with displacement of the cervical cord posteriorly but not effacement. The herniation extends into the thecal space approximately 3 mm at its maximal extension. No other disk disease is seen. . . .

---

[3] Citation to multiple page exhibits without a pinpoint citation to a page number is not proper. Plaintiff's counsel was ordered to provide a page number. Doc. 12, p. 2.

R. 261. It was also noted that there was a "[m]inimal insignificant disk bulge" at C6-C7. *Id.* Plaintiff also cites Exhibit 6F as evidence that Dr. Saleh conducted NCV[4] and EMG[5] studies on February 8, 2007, and the nerve conduction velocity study revealed a "conduction block of the median nerve at the wrists and compatible with the clinical diagnosis of carpal tunnel syndrome." Doc. 13, p. 11. This assertion likewise is supported by the test results in this record. R. 291.

Plaintiff argues that these underlying medical conditions were of such severity that they reasonably could be expected to cause the pain which Plaintiff subjectively described in her testimony. Doc. 13, p. 11, citing Exhibit 6F, p. 4. On January 24, 2007, Firas Saleh, M.D., examined Plaintiff for "persistent neck pain for the past 14 years." R. 287. Dr. Saleh related that Plaintiff had been in an accident in 1993, and "ever since then" had complained of neck pain with numbness, tingling and pins and needles in both upper extremities. *Id.* Plaintiff told Dr. Saleh that in 1993 she was told that she had pinched nerves and surgery was recommended but she had never considered that option. *Id.* Dr. Saleh said Plaintiff took Relafen[6] for pain. *Id.* Relafen seemed to help, but not completely; there were no significant side effects, however. *Id.*

---

[4] Nerve conduction velocity testing. DORLAND'S MEDICAL DICTIONARY FOR HEALTHCARE CONSUMERS.

[5] An EMG is an electromyogram. Electromyography is an electrodiagnostic technique for recording the extracellular activity of skeletal muscles at rest, during voluntary contractions, and during electrical stimulation. DORLAND'S MEDICAL DICTIONARY FOR HEALTHCARE CONSUMERS.

[6] Relafen, a nonsteroidal anti-inflammatory drug, is used to relieve the inflammation, swelling, stiffness, and joint pain associated with rheumatoid arthritis and osteoarthritis. PDRhealth™, PHYSICIANS' DESKTOP REFERENCE.

Plaintiff complained of "worsening numbness, tingling and pins and needles of the hands that usually is triggered by repetitive manual use of the hands . . . ." *Id.*

On examination, Dr. Saleh found that Plaintiff had normal bulk, tone, and strength in all extremities, with no muscle atrophy. R. 288. Her walking was also normal. *Id.* He found "significant tenderness and tightness of the cervical muscles bilaterally," and "positive Tinel[7] and Phalen[8] sign bilaterally at the wrists with numbness and tingling sensation involving the lateral two digits of both hands." *Id.* Dr. Saleh's diagnosis in relevant part was bilateral carpal tunnel syndrome, neck pain, possible cervical radiculopathy. *Id.* He ordered EMG and NCV studies to determine whether there was cervical radiculopathy or carpal tunnel syndrome. R. 289. He continued to prescribe Amitriptyline[9] (for radiculopathy symptoms) and Relafen. *Id.* He

---

[7] Tinel's sign is: "A tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve. It indicates a partial lesion or the beginning regeneration of the nerve." DORLAND'S MEDICAL DICTIONARY FOR HEALTHCARE CONSUMERS.

[8] "Phalen's test is used in carpal tunnel syndrome where forcible palmar flexion of the wrist causes venous engorgement of the canal and an exacerbation of the symptoms." Gpnotebook (www.gpnotebook.co.uk). "Phalen's maneuver is described as follows: the size of the carpal tunnel is reduced by holding the affected hand with the wrist fully flexed or extended for 30 to 60 seconds, or by placing a sphygmomanometer cuff on the involved arm and inflating to a point between diastolic and systolic pressure for 30 to 60 seconds." DORLAND'S MEDICAL DICTIONARY FOR HEALTHCARE CONSUMERS.

[9] Amitriptyline hydrochloride is a tricyclic antidepressant having sedative effects; it is also used for treatment of chronic pain. DORLAND'S MEDICAL DICTIONARY FOR HEALTHCARE CONSUMERS.

also started Plaintiff on Flexeril.[10] *Id.* As noted above, the MRI a few weeks later determined that the problem was carpal tunnel syndrome.

The ALJ discounted Plaintiff's testimony, first observing that her described limitations were inconsistent with evidence of her capacity for daily activities. He found that she could cook meals, manage her daily hygiene, wash clothes, play with her dog, and shop. R. 16. He noted that her son reported that she goes outside daily, is able to drive a car, and shops for groceries. *Id.* These findings are supported by substantial evidence in the record. R. 165-171, 181. Plaintiff did say, however, that she gets tired quickly when she does these things, her hands "go to sleep," and her knees and heels hurt. R. 168. Still, the ability to do these activities is substantial evidence in the record to conclude that Plaintiff's cervical disc condition and carpal tunnel syndrome do not significantly limit the use of her hands and arms.

Further, as pointed out by Defendant, Plaintiff was found to have normal manual dexterity, good coordination, normal sensation, normal strength, and normal motor function on a number of physical examinations. R. 270 (normal musculo-skeletal examination and normal neurological examination); R. 277 (normal grip with full grip strength; normal manual dexterity; normal sensation to soft touch and pin; good coordination); R. 288 (normal strength in all extremities; normal coordination; normal sensation intact to light touch, pin prick, temperature, and vibration, though there was "numbness and tingling involving the lateral two digits of both hands"); R. 355 (full range

---

[10] Flexeril is a muscle relaxant prescribed to relieve muscle spasms resulting from injuries such as sprains, strains, or pulls. Combined with rest and physical therapy, Flexeril provides relief of muscular stiffness and pain. PDRhealth™, PHYSICIANS' DESKTOP REFERENCE.

of motion at all joints, but with positive fibromyalgia trigger points); R. 357 (joints not tender, with full range of motion, equal strength, and no muscle atrophy).

As also argue by Defendant, straight leg raising tests for lower back pain were negative, and Dr. Elshazly found that Plaintiff's knee was "okay" that day, though she was unable to squat completely because of knee pain. R. 277. Dr. Saleh found that Amitriptyline "seems to be helping with her radiculopathy symptoms as well as the dysesthesia symptoms in the hands." R. 289. Finally, it is noted that on November 26, 2007, Plaintiff told Dr. Crayton, a treating physician, that her fatigue and pain were improved, but she wondered if she should apply for disability. R. 354. Dr. Crayton said that he did not think that Plaintiff should seek disability because he thought "that we can make her symptoms better" with medication. *Id.*

All of this evidence, which was fully discussed by the ALJ, R. 16-18, is substantial evidence in the record to determine that the cervical abnormality revealed by the MRI and Plaintiff's carpal tunnel syndrome were not such as to reasonably be expected to give rise to the claimed pain and other symptoms. Plaintiff points to no other medical evidence in the record to consider in reviewing the ALJ's credibility determination.

**Conclusion**

Considering the record as a whole, the findings of the Administrative Law Judge were based upon substantial evidence in the record and correctly followed the law. The decision of the Commissioner to deny Plaintiff's application for benefits should be affirmed.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on August 17, 2010.

s/ William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**